and we'll hear first from Mr. Clary but as I said in the other arguments I'll give you five minutes uninterrupted to begin your remarks if you so choose because of the difficulties of Zoom communication. Thank you Your Honor. May it please the court. In this case there are three issues really presented on appeal. First the invasion of privacy issue. Did the district court correctly dismiss it under 12b-6? We have the same question with respect to the negligent supervision claim and then finally whether the district court properly granted summary judgment on the intentional infliction of emotional distress claim. With respect to invasion of privacy our argument is predicated on the on the prong that is known as intrusion on seclusion or personal affairs and of course the court has read the record so it knows what the facts are in this case. Mr. Amin basically went to the was granted permission to go to the restroom ran into UPS division manager Sergio Castro who informed him that he would be terminated if he went to the restroom. Amin insisted that it was an immediate need for him to use the facilities. That did not matter to Mr. Castro. He directed Mr. Amin to return to his location and to continue working. If he didn't do that that he would walk him out that he would comply with that order. He went back to his location. At that point Mr. Castro followed him back to that location and stood behind him to make sure that he did not leave to use the restroom and then you know nature took its course. Mr. Amin defecated on himself. We're contending that that is a violation of the Texas tort of invasion of privacy through through through seclusion intrusion on seclusion or his personal affairs. UPS has raised two issues in response to that. Number one they say that because the act was performed in public there is an intrusion on personal affairs and I think that's a very violent intrusion on personal affairs in this particular case. Certainly a dramatic one. Now we also have a number of other issues that  have to do with privacy. We also have a second argument that UPS has made and that argument is that there must be collection of information associated with the intrusion before there can be a tort under Texas law for violation of the invasion of privacy based upon intrusion of seclusion on seclusion or  privacy. One of them is that the Texas courts have disagreed with the information that has been disposed of by the Texas courts. They have disagreed with that. In a case Donnell versus Lara which this court has cited with approval in St. Paul Fire and Marine versus Green Tree Financial in those cases the court upheld a tort claim predicated on invasion of privacy through intrusion of seclusion where there were phone calls made abusive phone calls in a series but there was no information ever collected and that's pretty much consistent with what other courts from other states have held with respect to the this particular tort governed by the restatement. They've all pretty much lined up against the the argument that you have to collect information. It's in the intrude on the person's personal affairs and certainly that happened here. The two cases that I think are very compelling in my my judgment I think the Iowa Supreme Court in the top held case went through a very exhaustive discussion of the tort and then I think also the Alabama Supreme Court in response to a certification series of a series of questions certified by the 11th Circuit also addressed that issue exhaustively in Phillips versus Smalley maintenance services at 711 F second 1524 the court's responses to those issues the Alabama Supreme Court's responses are are reported there the second issue that we've taken up in this case is negligent supervision the district court held that that case that this tort was preempted by the Labor Management Relations Act I don't see how that was preempted at all the the district court acknowledged that there's no nothing in the the collective bargaining agreement that references employees right to use the restroom and article 51 which is what the district court relied on simply establishes a a mechanism in order to resolve grievances that are filed by employees the fact that there's a mechanism to file a grievance has nothing to do with preemption the Supreme Court's been pretty clear you can base a tort claim on the very same facts that you can base a contractual grievance on so taking all those things into account I don't think that this claim was that there's a valid argument that the negligent supervision claim was was preempted by the collective bargaining agreement the collective bargaining agreement really doesn't say anything that would would need to be reviewed or analyzed in order to determine whether there is a valid negligent supervision claim in fact the only thing that's there is a very broad statement that the employer will not do anything to basically abuse the integrity of the and will also take into account the physical condition of the employee it's a very just a general statement in article 37 of the CBA so taking all those factors into account and understanding what the Supreme Court said in the lingle case and other cases that it has decided under the labor management relations act and also under related statutes in particular the Hawaiian Hawaiian Airlines case the the idea that there was preemption here seems to me to be I don't know just not consistent with what the Supreme Court has said I think the district court erred in concluding that there's a very broad statement that there is a valid negligent supervision claim in  particular there are many disciplinary provisions in the CBA that somehow need to be construed in order to resolve this issue of negligent supervision and finally the intentional infliction of emotional distress issue I mean I acknowledge this is a difficult tort to recover on under Texas law in fact it's a gap filler tort you know if you if you can recover on any other claim then it doesn't then you don't have a viable intentional infliction of emotional distress claim and it seems to me here this is a pretty the reason I pleaded here was because I think it is a pretty significant outrageous scenario that did result in severe emotional distress to my client now the district court did not disagree that that there was an outrageous element here what the district court held was that there was not some evidence of severe emotional distress and for that reason granted summary judgment. Mr. Clary, Mr. Clary you I think you need to probably ought to concede that there's no Texas in fact you haven't cited any case that's similar to this in fact maybe the most similar situation was one of the hypotheticals in the restatement second that you mentioned in your brief and what I'm wondering is should we certify this to the Texas Supreme Court on the question of a cause of action. I've thought about that your honor it's certainly something that you haven't the option to do my concern is I really think when I'm thinking through this I think that Mr. Castro's case is a close case. I think that his personal affairs and his right to seclusion were compromised as soon as he made it known that he had an emergency situation that needed to be dealt with and the district manager the division manager Mr. Castro said no I'll fire you if you if you use the rest. To me that should be sufficient under any standard to qualify as an intrusion on your personal affairs. Let me ask you one let me ask you one question. It strikes me that your argument that with regard to the CBA preemptive force is absolutely sound and it's not preemptive and I think it strikes me as being erroneous and that would come back to you for your claim that you want to make there. My question goes to the content of that claim with that will that claim allow you to to bring pretty much the same claim that you otherwise would and you can and with that going back to the to the body of Texas tort law does that give you your client a relief? Potentially it could I think your honor certainly I think the damages from that if I can prove negligent supervision would be similar I would think. So that pathway would avoid would get to get to where you want to go without waiting on a passage to the Texas Supreme Court. If we were uncertain about Texas law we normally ask the Texas Supreme Court but in this circumstance I wonder if it struck me that you may have all that you need. If it's if I'm correct that we ultimately conclude that 301 there was no preemptive there was no preemption here. The court was in error in concluding. That may be your honor. I think you know I haven't taken any discovery on the negligent supervision claim so that's what causes me a little bit of pause here. I'm not familiar with it either that's why I was asking it. Yeah I think I think without factual development we haven't had much so far. I think without that I'd be I don't ask you to waive. I've not asked you to waive anything. I'm just trying to Yeah I think if the court is concerned that you know it shouldn't be deciding the invasion of privacy claim here without input from the Texas Supreme Court I'd rather that the court certify that issue to the Texas Supreme Court than just throw it out. I thought you alleged that Castro had a habit of not allowing bathroom breaks. Castro where there is evidence that we have and we did allege in the complaint that he had done this before. Counsel on the preemption question separate and apart from Judge Higginbotham's view about the MRA. Am I right that you still need an underlying tort against Castro so that if your invasion of privacy claim fails and the IAD claim fails then you don't even need to reach the preemption question because the negligent supervision claim fails as a matter of law without an underlying tort. Did I do that correctly? Yes you did your honor that is exactly right under Texas law if you don't have an independent tort to go with it. But negligent supervision is independent is it not? Well there's case law your honor that's that and this is something that I discovered researching this that that if you have you have to prove negligent supervision but you also have to prove that there's a tort there's a separate tort associated with it. What case is that? I don't have that site in front of me. I mean again if Texas creates an independent duty to supervise and the CBA clearly doesn't encompass this as far as I'm concerned then why isn't the duty to supervise the independent tort? Because you have to show your honor I can I can supplement with that case. I know that I've seen it and well I'm probably in the brief somewhere but I'm not sure that that it is in the briefs it wasn't raised but I do think that I've come across cases in in researching this that indicate that in order to establish that you were damaged by the negligent supervision you have to show that there was some tortious impact. There may be negligent supervision but if you can't show that there's an independent tort some of these Texas cases have said that that's that's throws you out. I see what you're saying. Counsel I just wanted to say I appreciate the candor. I recognize that's not a convenient fact for your case but that's my understanding of Texas law too and the courts of appeals have been unanimous in as far as I can tell and I appreciate your candor on it. Well that's another reason that I would not like to throw out my question. Let me pursue that one step further. I guess I then don't understand how there is any claim for negligent supervision. Well there's a claim for negligent supervision if there's an invasion of privacy or an intentional inflection of emotional distress. Why isn't there an invasion of privacy here? Because you say I'm sorry. Well I won't pursue that with you but they it seems to me that that that's a negligent supervision then it's empty of content. Well I think unfortunately that's where Texas law is at at this point. If you don't have an independent what role does independent negligent supervision play? Well if you have an independent tort you might have different level of damage for it. Different level of damages that's that's a claim but it affects the compensation. Yes but doesn't it also go I'm sorry I didn't mean to interrupt. No I think the question is whether there is a there's any recovery under negligent supervision without some independent reach of duty. I think there's a question and and what strikes me as being of that of emptying that negligent supervision of any content because what you have is some some other tort that and you violate that tort and you throw in that there was negligent supervision. I'm not sure what it is uh it's just seemed anomalous to me that's neither here or there. Well I think Judge Higginbotham you're right that there's you know if there's negligent supervision there's a breach of a duty and most of the time that's going to result in some kind of damage to the to the employee but Texas courts have framed this as I read the cases where you need to prove that there's an independent court associated with the negligent supervision in order to recover. Well anyway you have a chance for rebuttal and we'll turn this over to Ms. Parris. Thank you may it please the court. My name is Andrea Parris and Kim Boyle and I represent UPS in this appeal. Your honors I will address the first and third issues so the invasion of privacy and the IIUD claims and Ms. Boyle will be handling the preemption argument negligent supervision claim. As you heard the appellant only appealed one form of this invasion of privacy claim whether he stated a claim for intentional intrusion upon his seclusion solitude or private affairs or concerns. The crux of his argument is essentially that UPS denied Mr. Amin access to a restroom which caused Mr. Amin to defecate himself. In his briefing to this court the appellant cites over 45 cases to support his argument that his intrusion claim should not have been dismissed. Notably not a single one of those cases supports that an intrusion of Mr. Amin's solitude seclusion private affairs or concerns actually occurred as defined by Texas law much less the proposition that an invasion of privacy claim exists when one party interferes with another's efforts to seek seclusion. In fact the majority of the 45 cases that he cited are not even civil actions involving invasion of privacy or even cases applying Texas law. To aid the court in determining whether the district court correctly dismissed this claim I think an analysis of the parameters of the tort is instructive. So first of all there are only three Texas Supreme Court cases that discuss this particular form of invasion of privacy. The first is Billings v. Atkins. It's the first case that in Texas to recognize the claim an invasion of privacy claim of this particular form and it upheld the jury verdict finding a wiretap of a person's phone in their home was considered an invasion of privacy. The second case that the Texas Supreme Court considered was Valenzuela v. Aquino and that set the definition of what constituted a violation of the tort and it largely followed the restatement and in that case they considered whether picketing directed at a family's home was an intrusion and in that case the Texas Supreme Court held that it was not noting that if it were to hold otherwise picketing focused at a residence would always be an actionable breach of privacy regardless of the circumstances. And the last case that we see that the Texas Supreme Court made any comment about this claim is the Texas Comptroller of Public Accounts v. Attorney General of Texas. This is a 2010 case and two Supreme Court justices stated in a concurring and dissenting opinion that no Texas court has ever found a violation of the intrusion upon seclusion tort absent of physical intrusion or surveillance upon the seclusion of another. The justices noted in this particular scenario that the tort's not committed by someone who unintentionally facilitates a possible intrusion and to expand the tort in that case as the plaintiff suggested would essentially redefine the tort to include any action that may or may not lead to an intrusion. So as you can see after the tort was developed the two opinions that have even discussed Texas Supreme Court opinions that have even discussed this are hesitant and are careful to ensure that it's not improperly expanded. Based on these two or three Texas Supreme Court cases Texas district courts and appellate courts and federal courts applying Texas law have quote consistently held that an intrusion upon seclusion claim fails without evidence of physical intrusion or eavesdropping on another's conversation with the aid of wiretaps microphones or spying. Counsel let me ask a question. Suppose that the supervisors hear that this man was working in a particular phase and he simply went over and locked the door and said you can't exit. Would it be an invasion of privacy if someone locked the door and would not allow him to exit? Well would you not have an independent tort of some kind there? Well your honor I think the parameters of this claim is if we review the Texas cases and the federal cases applying this we really see five areas of categories of conduct where courts have found a physical intrusion or eavesdropping. The first type is a physical or visual intrusion of you know in a bedroom. We have a case that says that would be an intrusion. The second category would be physical and visual intrusions of a person's nude body. That's the case that Mr. Clary referenced the Aguinaga versus Sandinez corporation. The third category. I've read those cases but my question is it seems quite odd that there is no actionable cause of action under state law of Texas for a supervisor simply to deny the person's exit. Locked him up. Let's just take hypothetically that he's angry with him and he's working in this shop and he closes locks it up and keeps him there. Your honor I think that there is a tort in this case and in that scenario and that would be the I.E.D. claim under Texas law. Mr. Amin pled and maintained an I.E.D. claim. The only reason that claim failed is because he failed to present sufficient evidence of severe emotional distress as defined by Texas law. What's a threat of it the same as locking the door to a worker. And your honor in the invasion of privacy context I don't think that that would be deemed an invasion of privacy as it relates. Ms. Parris isn't there a case where a supervisor maybe this is the Aguinaga case was making repeated sexual advances and threats to an employee now are you saying that that's not an invasion of privacy. Your honor repeated requests or inquiries into one's sexual activities under Texas law has held not to be an invasion of privacy. The case that Mr. Amin cites the Aguinaga case well first of all it's not a Texas case it was decided by a federal court but the facts in that was coerced right. She was okay even apart from that even apart from that part of 652 B refers to invasion into private affairs. Now don't you agree that one's excretory function are close to as private as you can get. In fact or similar functions I remember a presidential debate where people were totally appalled when one of the then contestants referenced the questioners menstrual periods right. Now certainly some things are private affairs. I don't see how UPS can legitimately argue that excretory functions are not according to all civilized standards except in San Francisco private affairs. Yes your honor and I think we have to certify that to the Supreme Court to to get to to see whether they so declare so be it but this is this is god-awful offensive to me. Yes your honor and I will say that even if there is a private if the court finds there is a private affair there still must be an intrusion if two parts and under Texas law we have seen that there are really only five categories where the courts have found an intrusion. That does not mean that does not mean we are prohibited from making a logical and reasonable eerie guess. Another point I would make is that the suppose that part of part of what surrounds this sequence of events is that Mr. Castro not off not only allegedly stood behind this fellow but he also publicized immediately publicized what was going on in such way that all the co-workers were exposed to picketing. Your honor my understanding is that that publication portion of his invasion of privacy claim was not appealed and is not before the court. That's part of the fact it's part of the surrounding facts is it not or is that a separate somehow a stand alone. That was an allegation your honor but Mr. Amin did not appeal the dismissal of the publication form of the intrusion upon his seclusion solitude private affairs or concerns occurred. I'm not sure that this is a divisible tort in that way. Let me ask you one other thing on what basis does UPS have this little footnote that it that it takes issue with whether this event occurred. Yes your honor we would deny that the facts occurred as alleged your honor but how would you do that. Well I thought that was a frankly sort of sleazy and in what how does UPS deny that the facts occurred in the way they are alleged. Your honor there there were over 10 depositions taken in the case months and months of discovery and without going too far outside the record there were individuals who denied that this happened the way that Mr. Amin explained. However for purposes for the 12b6 and the motion for summary judgment UPS accepts all of Mr. Amin's allegations as true but even accepting that as true your honor we believe that he's failed to state a claim for invasion of privacy or self-set forth sufficient evidence of the severity of his emotional distress to maintain an IIED claim as defined under Texas law. Your honor I I think it is helpful for the and then just briefly to go over these categories and then I'll move on to the IIED claim but in reviewing the Texas cases there are really only five areas where we've of conduct where we've seen the invasion of privacy toward apply. Like we were saying it's physical or visual intrusions of property or a person's new body, abusive debt stalking and surveilling private information through spying, hacking or eavesdropping. Your honor there's a clear spectrum of coverage for this claim and Mr. Amin failed to cite any cases to support an expansion beyond these categories. Your honor permitting him to maintain an invasion of privacy under these claims would be an improper expansion of Texas law something that we can see the Texas Supreme Court has been wary of claim he's not without recourse as the IIED claim he brought was judicially created for this specific reason to provide an avenue of recovery in those rare instances in which a plaintiff has no other recognized theory of redress. So briefly switching gears to the IIED claim he primarily makes two arguments to support that he had severe emotional distress and one is that the shocking nature of the incident itself suggests he suffered emotional distress and two that the incident has caused a substantial disruption in his daily routine. With his first point it's well established that these are two separate elements the extreme and outrageous element and the severity of the emotional distress. So to equate the two would essentially render the fourth element meaningless and so he has to prove severe emotional distress even if the conduct is one that that one would consider extreme and outrageous. In his second point he claims that the incident caused a substantial disruption in his daily routine. As an initial matter in briefing the issue before this court in the district court Mr. Amin relies on the standard for mental anguish damages not the severity element as required under Texas law. So to prove severe emotional distress and the element of the IIED claim the correct standard is that the distress was so severe that no reasonable person could be expected to endure it. In analyzing the Texas cases we see that courts have looked to intensity and duration as well as whether the individual sought medical treatment. In this case we can see that Mr. Amin does generally allege things like stress worry shame resentment embarrassment that he was depressed and tired. However under Texas law that there are many cases that have held that those general feelings of embarrassment stress nervousness all of that is insufficient as a matter of law to prove the severity element. UPS has presented the court 11 cases all of which were upheld all of which held as a matter of law that the types of feelings described and exhibited by Mr. Amin were insufficient to withhold this claim. Certainly the fact that Mr. Amin never saw a therapist counselor or healthcare professional is also indicative and as one court as many Texas courts have stated militates against the fact a finding of severe emotional distress. He was never diagnosed with anxiety or depression and he provides no meaningful details that his daily routine was disrupted. To the contrary he said he was a very active person and that only changed 11 months later due to an unrelated surgery. Your honors I'll now I see my time is up and I'll now pass the baton to Ms. Boyle to address the preemption argument. May it please the court your honors I realize that I have an uphill battle in arguing preemption based upon the court's questions and comments to Mr. Clary so I'll jump right in as it relates to UPS's position on this point. As the court is aware in this this court ruled in Baker versus Pharmacy Electric Corporation that not only is preemption governed as relates to claims found directly on rights created by a collective bargaining agreement but it also governs claims substantially dependent upon an analysis of a collective bargaining agreement. Mr. Clary refers to article 51 of the collective bargaining agreement between UPS and the Teamsters union but fails to address article 37 of that same collective bargaining agreement. First of all the specific title of article 37 says it governs management employee relations. The specific provisions of article 37 state the following the employer shall not in any intimidate harass coerce or overly supervise and that's a direct quote or overly supervise any employee in the performance of his or her duties. The employer shall not retaliate against employees for exercising rights under the agreement and in considering any grievance alleging retaliation for exercising the rights. Those actions that may modify an employee's work assignment or reprimand employees shall be relevant factors to a determination of motivation and getting to the quote that Mr. Clary referred to the employer will treat employees with dignity and respect at all times. So looking at the relevant relevant provisions of article 37 against the backdrop of the actual allegations in Mr. Amin's complaint we do believe that there is a preemption here under section 301 of the Labor Management Relations Act. Mr. Clary focuses specifically only on the issues related to whether or not or the fact that there was a defecation however he fails to address other very pertinent paragraphs in that complaint and I will turn the court's attention to one paragraph 15. Paragraph 15 Mr. Amin specifically alleges that Castro asked if he had already had his 10-minute break and Castro told all personnel working no one goes to the bathroom except on their 10-minute break. The 10-minute break issue specifically relates to supervisions whether or not there was over supervision harassment intimidation. In paragraph 18 of the complaint Castro demanded that Amin immediately return to sorting on pain of counsel. Yes I appreciate your detailing the various provisions of the CBA that would cover this. My question is a bit different. The question of preemption issues I would frame it as different is not is the exclusivity of those provisions. It's not necessary as I understand it to be have independent claims of the CBA here. The fact that they might have gotten them under the CBA is not controlling. Would you address that? Yes your honor I'd be happy to address that. I know Mr. Clary cited the case and the case law does say that if it is a independent claim it does not necessarily have to be governed by the CBA but based upon the policy of the Labor Relations Management Act and based upon section 301 where the courts have specifically said that the purpose of 301 was to allow federal courts quote to fashion a body of federal law for the enforcement of CBAs. It seems clear to me your honor that these specific allegations as outlined in the complaint actually fall under provisions of the CBA and such that Ms. Boyle. Yes your honor. I mean you know I was I was disturbed by UPS little footnote claiming they they disputed the allegations about the way in which this event occurred. I also found it very odd that neither that the brief never cited the Lingle case. Um and your honor I'm I'm apologizing. Which is controlling and yeah you know if if we didn't have Lingle I would be very uh sympathetic to your argument based on section 301 but as you said the reason you said it's an uphill battle is because Lingle says if the state creates an independent duty then the CBA then they're two different claims and the CBA is not uh cannot preempt. And your honor. Yeah. May I answer your question? Yes ma'am. Your honor final line is we do believe that the state does have I mean and Mr. Clary cited that the state does have um a claim for negligent supervision um that has nothing to do with the CBA but my understanding of the case law even including the Lingle case my understanding of the case law is looking at whether or not it's intertwined with the provisions of the collective bargaining agreement and whether or not there's substantial dependence upon those relevant provisions of the collective bargaining agreement to determine whether or not section 301 preemption applies. Well I don't see well I don't see how you can well just for the sake of argument I don't see how you can say much about how the CBA should applied here because after all the come I mean at most uh uh gave lip service to enforcing the CBA in this case. It did you know that something happened four months after Amin was discharged when he presumably was no longer a member of the union or if he was he was no longer a member of UPS and uh I just I think the reference to CBA is meaningless in that circumstance. Um your honor may I respond since I'm out of time yes your honor I'll say briefly that I understand the court's concern with that and notwithstanding whether or not UPS and the union properly complied with the time requirements outlined in the CBA related to the resolution of a grievance. In my view your honor the snapshot view is determined by looking at whether or not at the time the incident in question took place the actions of Mr. Castro as the manager and supervisor over Mr. Amin whether or not his legal duties as manager are based substantially upon the which instruct and mandate him not to intimidate which instruct and mandate him not to coerce and certainly instruct and mandate him not to overly supervise that's the specific language used in the collective bargaining agreement your honor. I recognize that I'm out of time and I appreciate the court's consideration um of this issue. Okay thank you um yes ma'am thank you Mr. Clarence yes thank you judge um on the preemption issue I don't think that UPS would dispute the fact that anything that's alleged in the complaint would not qualify as uh basically violating article 37 of the CBA. If it's not in dispute it's not something that needs to be looked at um I don't think it needs to be looked at at all certainly uh um this tort the torts I've alleged in this complaint exist independently of anything in the CBA but if you want to look at the CBA at all um it's not objected to uh by by UPS. They have not alleged that the facts of this case as alleged in the complaint um don't violate the CBA. You know they're atrocious facts and and uh if they're proved at trial then then there should be no preemption. As far as the IIED claim goes I just want to say that I I think there was enough to go to the jury with that. It shouldn't be the district judge determining whether what is in the affidavit is sufficient to demonstrate severity. That's something that the jury under the seventh amendment uh should should determine. Uh you know we're not in state court we're in we're in federal court and I think the uh the jury should be the one making that decision. I don't have any questions. I'll be happy to answer them. Other than that I've I've really said everything I have to say about it. All right. Thank you very much. Uh it's a very interesting case. We are um in recess today. Thank you. Thank you, your honors. Thank you.